UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DILSHER SINGH, (A#221-390-351), | No.  1:26-cv-01858-TLN-SCR |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| CHRISTOPHER CHESTNUT, | |
| Respondents. | |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.      Factual and Procedural History**

Petitioner is an asylum seeker from India who has been detained by Immigration and Customs Enforcement ("ICE") since entering the United States on January 8, 2025.  ECF No. 6-1 at 2 (I-213 Form).  Petitioner was stopped by U.S. Customs and Border Protection ("CBP") at the San Ysidro Port of Entry based on his lack of legal entry documents.  ECF No. 6-1 at 2.  CBP initially placed him in expedited removal proceedings pursuant to Section 235(b)(1) of the Immigration and Nationality Act.  ECF No. 6-1 at 2.  However, he subsequently requested asylum.  ECF No. 1.  On March 15, 2025, an asylum officer determined that he had a credible fear of persecution if he was returned to India.  ECF No. 1 at 9.  As a result, petitioner was placed

in removal proceedings in Immigration Court and served with a Notice to Appear ("NTA") on April 7, 2025. ECF No. 6-2 at 1. The NTA charged petitioner as removable for not having valid entry documents and for being present without being admitted or paroled into this country. ECF No. 6-2 (Notice to Appear); see also INA §§ 212(a)(7)(A)(i)(l), 212(a)(6)(A)(i). Petitioner's original master calendar hearing in immigration court was scheduled for September 12, 2025. ECF No. 1 at 9. However, this hearing was continued for various reasons not attributable to petitioner, and the hearing was finally concluded on January 27, 2026. ECF No. 1 at 9. The immigration judge ("IJ") denied petitioner's asylum application and ordered him removed to India. ECF No. 1 at 10. Petitioner appealed that decision to the Board of Immigration Appeals ("BIA").

Petitioner filed the instant habeas corpus action on February 28, 2026 challenging his prolonged detention for approximately 14 months without any type of bond hearing as a violation of his Fifth Amendment right to due process. ECF No. 1 at 6, 10. He also contends that his mental health is deteriorating based on his ongoing detention. ECF No. 1 at 6.

In their answer, respondents contend that petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), but they concede that this position has been rejected by the majority of judges in this district. ECF No. 6. Respondents attached relevant immigration documents to their answer. ECF Nos. 6-1, 6-2.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately

alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").  The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to

3

others."  Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B.    Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i).  But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the non-citizen is to remain detained.  See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3.  Such parole, however, "shall not be regarded as an admission of the [non-citizen]."  8 U.S.C. § 1182(d)(5)(A).  Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

**III.    Analysis**

In reviewing petitioner's due process challenge, the Court turns first to the question of whether petitioner has a protected liberty interest from prolonged detention during his removal proceedings.  While petitioner's immigration case will at some point have a "definite termination point," there is no clear end in sight to his ongoing detention, which has now lasted for almost fourteen months.  See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore [v. Kim, 538 U.S. 510 (2003)]" and "neither

4

release nor removal are imminent").  Neither party provides this Court with any time frame in which petitioner's appeal to the BIA will be resolved much less any subsequent appeal to the Ninth Circuit Court of Appeal that may follow.  In such circumstance, even mandatory detention statutes like § 1225(b)(1) and their implementing regulations are subject to constitutional limitations on an as-applied basis.  See, e.g., Nielsen v. Preap, 586 U.S. 392, 420 (2019); Demore, 538 U.S. at 532-33 (2003) (Kennedy, J., concurring).  Accordingly, the undersigned finds that petitioner has a protected liberty interest and may invoke the Due Process Clause to seek protections against prolonged detention in his individualized circumstances.[1]

Having so found, the Court applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework to determine whether petitioner is entitled to a bond hearing during the pendency of his removal proceedings.  See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention).

### 1.  Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without any bond hearing before a neutral arbiter.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690. Petitioner has been detained almost 14 months.  Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged.  See Zadvydas, 533 U.S. at 701; Tigranyan v. Warden of California City Detention, No. 1:25-cv-01554-DJC-SCR, 2026 WL 91765 (E.D. Cal. Jan. 13,

---

[1]  Respondents briefly argue that petitioner "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress."  ECF No. 6 at 2 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) and DHS v. Thuraissigiam, 591 U.S. 103, 139 (2020)).  However, Thuraissigiam is materially distinguishable from this case. Its "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question."  Padilla, 704 F. Supp. 3d at 1171-72.  Thuraissigiam "does not foreclose . . . due process claims which seek to vindicate a right to a bond hearing with certain procedural protections."  Padilla, 704 F. Supp. 3d at 1172.

2026) (finding a 14 month detention under § 1225(b) qualified as prolonged), adopted by 2026 WL 130843 (Jan. 16, 2026).  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez v. Garland, 631 F.Supp.3d 870, 880 (E.D. Cal. 2022) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).  Moreover, the majority of the delays in petitioner's hearing before an IJ appear attributable to a clogged immigration court docket or difficulties in obtaining an interpreter.  Petitioner's pursuit of an appeal to the BIA does not undercut his private interest. See Lopez, 631 F.Supp.3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process.").  Despite being in custody for almost 14 months, there is no clear end date for petitioner's detention.  For all these reasons, the first Mathews factor tilts in favor of petitioner.

### 2.  Risk of Erroneous Deprivation

"[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."  Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds); see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").  In petitioner's case, a bond hearing is a critical procedural safeguard because it provides both the non-citizen and the government with an opportunity to present evidence and to be heard by a neutral adjudicator.  This factor under Mathews also favors petitioner.

### 3.  Government's Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail."  Mathews, 424 U.S. at 335.  "[T]he government has a strong interest in effecting removal, and in protecting the public from danger."  Maksim, 2025 WL 2879328, at *5 (citations omitted).  "[H]owever, the key government interest at stake here is not the continued detention of

6

Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted). Thus, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-CV-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)); see also Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020). Moreover, petitioner's individual request for a bond hearing involves a minimal fiscal and administrative burden. In sum, this factor also weighs in favor of petitioner.

In light of this Mathews analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted and respondents be ordered to provide petitioner a bond hearing before an IJ within five days where the IJ must order petitioner released unless petitioner is found by the IJ to constitute a risk of flight or danger to the community by clear and convincing evidence. See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance); Singh, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Respondents be ordered to provide petitioner with a bond hearing before an IJ within five days where the IJ must order petitioner released unless petitioner is found by the IJ to constitute a risk of flight or danger to the community by clear and convincing evidence.

3. Within 3 days from the date of the bond hearing, respondents be directed to file a notice in this court certifying compliance with the above provision.

4. This order does not address the circumstances in which respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

5. The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 3, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE